# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| RUSSELL L. EBERSOLE, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:08cv00503 |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| BRUCE CONOVER, et al., | ) | United States Magistrate Judge |
|     Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Russell L. Ebersole, a former federal inmate proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983 regarding claims which arose while he was incarcerated at a state facility. By Order entered January 4, 2010, this matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Ebersole alleges that while he was incarcerated at Northwestern Regional Adult Detention Center ("NRADC"), employees Superintendent Bruce Conover, Captain David J. Pitts, Captain Kathy Sasser, Captain Allen Barr, Officer Debborah Hamilton, Assistant Director of Nursing Diane Bolinger, and Bureau of Prisons ("BOP") Case Manager Kim Rodrigue[1] (collectively "the defendants") violated his constitutional rights. Specifically, he claims that they failed to give him his medicine on several occasions, impeded his ability to conduct legal cases, attempted to charge him subsistence and medical care fees, and retaliated against him. The defendants have filed a motion to dismiss or in the alternative for summary judgment, supported by affidavits. Ebersole has received proper notice and has responded. Upon review, the undersigned recommends that Ebersole's amended complaint be dismissed and that defendants' motion be granted.

---

[1] Ebersole also names Sgt. Bennett, Lt. Seville, and "Unknown Nurses" as defendants to his action. However, Ebersole, who is not proceeding in forma pauperis and who was released from incarceration during the pendency of this action, did not serve his complaint upon these individuals. Therefore, it appears that Ebersole has abandoned his claims against these individuals and the undersigned recommends that these defendants are terminated as defendants to this action.

## I.

Shortly before Ebersole was scheduled to be released from federal custody, the BOP transferred him from the Federal Correctional Institute at Cumberland, Maryland ("FCI Cumberland") to NRADC on April 30, 2008 to participate in a work release program. NRADC is a Virginia local jail facility serving the counties of Frederick, Clarke, and Fauquier and the City of Winchester. It also has a contractual relationship with the BOP that allows BOP prisoners to be transferred to NRADC for work release programs. The matters at issue arose during Ebersole's approximate one-month stay at NRADC.

### Plaintiff's Allegations

#### A. Medical Claims

Ebersole alleges that he suffers from a variety of ailments, including cardiovascular disease, hypertension, myocardial fibrosis, ventricular hypertrophy, Type II diabetes, and frostbite to his left foot. Dkt. #21 at 14. When he left FCI Cumberland, Ebersole claims that he had a two-week supply of his medications. Id. Upon transferring to NRADC, Ebersole engaged in lengthy conversations with medical personnel informing them of his prescriptions. Id. at 29. He also discussed special dietary needs, particularly that he could not eat grapefruit, grapefruit products, or green leafy vegetables while on his medications. Id. at 14-15.

On April 30, 2008, the day he arrived at NRADC, Ebersole states that he was not given his pills because a nurse claimed she could not find them. Id. at 15. During that night, Ebersole states that he experienced "night sweats, hypoglycemia and great pain of mind and body . . . ." Id. NRADC personnel were still unable to find Ebersole's medication on May 1, 2008 and were also unable to get in touch with a doctor despite contacting the doctor's pager and answering service. Id.

On May 2, 2008, Ebersole collapsed and was then examined by NRADC medical personnel who determined that Ebersole was okay. Id. at 16. However, Ebersole claims he continued to experience "great pain of mind and body." Id. NRADC officials declined his request to see a cardiologist. Id. at 31.

Ebersole also claims that NRADC officials failed to properly manage his diet. Id. at 19. For the first two weeks of his four-week stay, Ebersole alleges that the defendants provided him with grapefruit, grapefruit products, and green leafy vegetables. Id. at 20. Ebersole did not eat these items and claims that he lost forty pounds in four weeks. Id.

**B. Access to Courts**

At the time that Ebersole was transferred to NRADC, he had a civil case, Ebersole v. Mukasey, No. 07-7770 (4th Cir. Dec. 26, 2007) (informal briefing order filed), pending in the United States Court of Appeals for the Fourth Circuit. The public record of that case shows that the Fourth Circuit first notified Ebersole of filing deficiencies on February 5, 2008. Appeals Dkt. # 7. Rather than cure the record, Ebersole objected to the well established provisions of the Prison Litigation Reform Act, ("PLRA"), an objection the Fourth Circuit dismissed without comment on March 11, 2008. Appeals Dkt. # 10, 11. When Ebersole still had not complied with the provisions of the PLRA on April 22, 2008, the Fourth Circuit ordered that Ebersole had until May 7, 2008 to comply. Appeals Dkt. # 12. Because Ebersole did not file anything, the court dismissed his appeal on May 13, 2008. Appeals Dkt. # 13.[2]

In his instant action, Ebersole claims he could not file a Fourth Circuit brief after his transfer to NRADC because he could not access his legal papers. On May 1, 2008, the day after he arrived at NRADC, defendant Rodrigue told Ebersole that because his legal papers would not

---

[2] The Fourth Circuit also dismissed a related case for failure to prosecute, prior to Ebersole's transfer to NRADC. Ebersole v. United States, 07-2200, Dkt. # 11 (4th Cir. Apr. 22, 2008) (order dismissing case).

3

all fit in his locker, they would be placed in the property room. Id. at 9. Ebersole informed Rodrigue that he had six pending legal matters and needed access to all of his legal materials every day. Id. at 10. On May 13, 2008, NRADC officials returned the contents of Ebersole's legal folders to him.

Ebersole also requested access to a law library and a typewriter. Because the typewriter was out of service, Ebersole was forced to use a three-inch golf pencil for legal work. He filed a grievance complaining that there were no federal law books in the law library and that the Federal Rules of Criminal Procedure were in poor condition.

### C. Work Release

When Ebersole was transferred to NRADC, he thought he would be allowed to work at a family business as part of the work release program. Id. at 18. He claims that the United States Probation Office and the BOP Unit Team had approved this plan; however, upon his arrival at NRADC, BOP Case Manager Kim Rodrigue told Ebersole that he would not be allowed to work at his family business. Id. Ebersole claims that Rodrigue wrote an incident report that caused Ebersole to be thrown out of the work release program and to lose twelve days good-time credit.

### D. Subsistence and Medical Fees

Ebersole complains that he, as an inmate in the work-release program, should not have to pay fees for subsistence and medical expenses to NRADC.

### E. Retaliation

Ebersole alleges that defendants retaliated against him for filing grievances and complaining about his medical care, access to his legal files, and his work release status.

**Defendants' Responses**

   A. **Medical Claims**

Before Ebersole transferred to NRADC, the BOP provided a pre-release evaluation that indicated that Ebersole had medical issues including diabetes, high cholesterol, a prior cardiac bypass, and cardiac valve replacement. Exhibit I to Dkt #34 at 2. However, Ebersole arrived at NRADC on April 30, 2008 without his medical records. Id. at 1, 3. During intake procedures, a nurse medically screened him and logged his medications into the electronic records program. Id. at 2. Inasmuch as his medical records did not arrive with him, NRADC personnel sought his permission to request them. Id. at 3. NRADC medical personnel also established tasks to monitor Ebersole's blood sugar and blood pressure. Id. The medical department submitted a special diet request to the kitchen to provide Ebersole with a type 2, non-insulin, low sodium diet. Id. at 3. The medical department modified this diabetes diet on May 1, 2008. Id. On May 7, 2008, Ebersole saw a facility physician. Id. at 4. No new orders were given regarding Ebersole's health at that time, though the doctor ordered tests to be done in one week. Id. at 3.

During the time that Ebersole was at NRADC, the facility's medical department was transitioning to a new electronic medical records software program. Id. at 2. The implementation of the new system created some transitional problems with the delivery of tapered dosages. Id. It is unclear whether Ebersole received his medication on May 1, 2008. A nurse initially stated that Ebersole had not come to the medical cart on May 1, 2008, and, as such, did not get his prescription at that time. Id. A nurse later stated that, in fact, she did give Ebersole his medication on May 1, 2008, and forgot to chart it because of confusion with the new system. Id. at 2-3. During a meeting with Rodrigue on May 1, 2008, Ebersole complained that he had not received his morning medicine. Id. Rodrigue notified the medical department of

5

his complaints and Ebersole was transferred there for observation and treatment. Exhibit D to Dkt # 34 at 4. On May 8, 2008 and May 12, 2008 Ebersole did not receive his evening medications. Id. at 3. On May 14, 2008, medical personnel at NRADC checked Ebersole to measure the clotting tendency of his blood. Id. at 3. The results were within normal limits. Id. Defendants assert that these normal results demonstrate that Ebersole suffered no harm from the few missed dosages. Id.

On May 8, 2008, the medical department submitted another request to the kitchen indicating that Ebersole's diet needed to be modified to not include any green leafy vegetables because of his medication. Id. at 3-4. Grapefruit and grapefruit products are not served at NRADC and have not been for more than three years. Id. at 4.

### B. Access to the Courts

NRADC has a law library that is regularly inspected by the BOP. Exhibit G to Dkt. # 34 at 1. If inmates need additional materials that are not available in the law library, they may request them and NRADC will attempt to obtain them. Id. at 2. During its inspections, the BOP has never raised an issue with the law library at NRADC. Id. at 1.

NRADC policy limits the amount of paper inmates may keep in their possession because large amounts of paper can pose a fire hazard. Exhibit F to Dkt. # 34 at 1. Specifically, provisions 12.15 and 4.09 of the Standard Operating Procedures allow the limitation of legal materials if they are voluminous. Id. Upon arrival at NRADC, Ebersole possessed six large folders, which an official ordered confiscated because they were too large to fit in the storage area. Exhibit H to Dkt. # 34 at 1. The official did not know that these were legal materials. Id. Similarly, inmates may not have large metal clips, such as the clips that were on Ebersole's folders when he arrived at NRADC, because they can be fashioned into weapons. Id. at 2.

6

On May 1, Ebersole met with Rodrigue. Exhibit D to Dkt. # 34 at 2. Rodrigue's duties include conducting intake sessions and otherwise processing BOP inmates who are joining NRADC work release program. Id. at 1. Rodrigue also spoke to Ebersole about NRADC's limits on the amount of materials he could keep in his locker or housing unit. Id. at 2-3. Ebersole told Rodrigue that he had six active legal cases and needed to work on them every day. Id. Rodrigue asked Ebersole to make a list of the cases and their deadlines so that he could get access to the materials one case at a time. Id. at 3. Ebersole responded that this was impossible, because all of the cases were ongoing. Id. Rodrigue said that he could also work on his cases at home once he earned a home pass. Id.

Between the time that Ebersole's legal materials were confiscated and the time that they were returned to him fourteen days later, Ebersole incorrectly believed that they were in the property room. Exhibit E to Dkt. # 34 at 1-2. He asked for access to the property control officer's workspace so that he could use his folders, but was denied because they were not present and because inmates were not granted access to that office. Id. Additionally, Ebersole's legal materials had not been placed in the property room. Id. at 2. A few days later, the property control officer located Ebersole's materials in another building. Id. On May 13, 2008, Ebersole's legal materials were put in less bulky containers and all staples, metal fasteners, and paper clips were removed, and his materials were returned to him. Exhibit F to Dkt. # 34 at 2.

**C. Work Release**

BOP policy requires NRADC personnel to notify the BOP if a federal prisoner will not comply with NRADC rules and regulations. Exhibit D to Dkt. # 34 at 1. The conditions of placement in NRADC's work release program require that inmates review and agree to certain conditions. Id. Prior to transferring to NRADC, Ebersole signed an acknowledgement that he

7

was expected to contribute to the cost of his residence and that he would be financially responsible for his medical care. Id. at 2. Ebersole agreed to abide by the rules and regulations of the work release program. Id.

However, at his initial intake meeting with Rodrigue, Ebersole stated that he wanted to work at a company he owned. Id. His request was denied because that company was involved in the offenses for which he was imprisoned. Id. Rodrigue presented Ebersole with the Work Release Participant Orientation sheet and the Work Release Procedures and Information sheet. Id. at 3. She also gave Ebersole several documents that he was required to review and sign as a condition of participating in work release.[3] Id. Ebersole refused to sign any of these forms and, consequently, Ebersole was not permitted to take part in the work release program. Id. Rodrigue informed the BOP of his refusal, as directed by BOP policy. Id.

**D. Subsistence and Medical Fees**

Because Ebersole did not participate in the work release program, he did not pay any fees for subsistence or for medical care expenses. Id.; Exhibit H to Dkt. # 34 at 1-2.

**E. Retaliation**

Defendants deny retaliating against Ebersole for any reason, including exercise of constitutionally protected rights.

**II.**

To establish a violation of 42 U.S.C. § 1983, a plaintiff must show that a person acting under the color state law deprived the plaintiff of rights guaranteed by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42, 45-46 (1988).

---

[3] Specifically, she gave him: a Work Release/Electronic Monitoring Participant Information Data Form, a Conditions of Work Release sheet and a Escape from Custody Agreement.

Ebersole claims money damages against the named individuals for allegedly: (a) acting with deliberate indifference to his serious medical needs in violation of the Eighth Amendment; (b) denying him access to the courts by seizing his legal materials and denying him an adequate law library; (c) requiring inmates to pay subsistence fees and the costs of medical care in violation of 18 U.S.C. § 4042(a)(2) and the Takings Clause; and (d) retaliating against him for asserting his constitutional rights by denying him participation in the work release program. Defendants argue that Ebersole's claims fail as a matter of law and that there is no genuine issue as to any material fact.

Federal Rule of Civil Procedure 12(b)(6) provides that claims may be dismissed for failure to state a "claim upon which relief may be granted . . . ." Thus, in an early test of a complaint, a plaintiff must "allege enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (emphasis in original). See also Giarrantano v. Johnson, 521 F.3d 298 (4th Cir. 2008) (applying Twombly in motion to dismiss proceedings in § 1983 case).

Additionally, Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment under Rule 56, the court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986).

In this matter, plaintiff has filed a verified complaint, pursuant to 28 U.S.C. § 1746. A verified complaint, setting forth specific facts based on personal knowledge, may be treated like an affidavit at summary judgment. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

However, the court is not required to treat Ebersole's assertions of law or application of law to fact, as true. Because the claims Ebersole puts before the court cannot survive these standards, the undersigned recommends that his claims be dismissed and the defendants' motion be granted.

## III.

### A. Medical Claims

Ebersole claims that NRADC officials violated the Eighth Amendment by demonstrating deliberate indifference to his serious medical needs in three ways: first, they failed to provide him several dosages of his medication; second, they did not allow him to see a specialist; and third, they provided an inappropriate and inadequate diet. The court finds that Ebersole has failed to demonstrate that the defendants acted with deliberate indifference to his medical needs and, therefore, that his claim fails.

The Eighth Amendment's prohibition on cruel and unusual punishment requires that prison officials not be deliberately indifferent to the "serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976). To demonstrate deliberate indifference, a plaintiff must establish the existence of a serious medical problem. Such a need usually involves a condition that threatens loss of life, illnesses, or permanent disability. Id. at 104; Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986). Conditions or delays that cause or perpetuate pain may also show serious medical need. Estelle, 429 U.S. at 104.

Merely alleging malpractice on the part of medical personnel is insufficient to state a claim under the Eighth Amendment. Id. at 106. "[A]n inadvertent failure to provide adequate medical care" also does not rise to the level of deliberate indifference. Id. at 105. Similarly, "[a]n accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." Id. Further, mere disagreements between an inmate and medical staff as to the proper course of treatment do not state a claim

upon which relief can be granted; "[q]uestions of medical treatment are not subject to judicial review." Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975).

Defendants concede that they failed to provide Ebersole his full dosage of medications on up to three occasions. While the failure to provide prescribed medications certainly can be serious, the facts here do not rise to the level of deliberate indifference. At most, the errors were "inadvertent failure[s]" and, thus, not actionable under the Eighth Amendment. Estelle, 429 U.S. at 105-06. Defendants have submitted records showing that once they became aware of the problems with Ebersole's dosage, he was sent to the medical department to be checked. Further, NRADC staff worked to track down his medications and to procure a doctor's care. Thus, although Ebersole may have missed medication on a few occasions shortly after his transfer to NRADC, he cannot show that defendants were deliberately indifferent to his serious medical needs.

Ebersole likewise cannot show deliberate indifference as to his diet. The defendants have submitted information indicating that the medical department requested a special diet for Ebersole. Ebersole claims that he received an inadequate diet the first two of the four weeks he was at NRADC. By Ebersole's own account, defendants remedied problems with his food after the first two weeks. Rather than suggest deliberate indifference, these actions demonstrate responsiveness to Ebersole's needs. To the degree there were errors in providing him food, Ebersole has not demonstrated that they rise to the level of deliberate indifference.

Finally, Ebersole complains that he was not given access to a specialist upon request. However, he has not submitted information showing that seeing a specialist was required given his medical condition. Rather, he indicates that NRADC officials required him to wait to see a specialist until Ebersole's medical records could be obtained. Notably, Ebersole was not

deprived of a doctor's care; defendants indicate that he was seen by a doctor on May 8. Thus, defendants clearly responded to the medical needs of Ebersole, even if they did not accede to his every request. Accordingly, the undersigned recommends that Ebersole's medical claims be denied and that the defendants' for summary judgment be granted.

### B. Access to the Courts

Ebersole claims that his First Amendment right to access the courts was violated because he was denied access to his legal materials from April 30, 2008 to May 13, 2008 and because the law library at NRADC was inadequate.[4] The court finds that Ebersole has failed to demonstrate any actual injury as a result of these alleged violations and, thus, that his claims fail.

Prisoners' rights to access the court include the right to legal information necessary to permit them to pursue certain claims. Bounds v. Smith, 430 U.S. 817, 828 (1977), overruled in part, Lewis v. Casey, 518 U.S. 343, 351-56 (1996). The unreasonable seizure or destruction of a prisoner's legal materials may constitute denial of a prisoner's right to access the courts. Bryan v. Muth, 994 F.2d 1082, 1087-88 (4th Cir. 1993). However, seizures of legal materials must be evaluated in light of a prison's legitimate peneological interests. Id. at 1087. Moreover, not every deprivation of legal information gives rise to a cognizable claim; rather, the denial of access must be alleged to have caused actual harm to the inmate's case. Lewis, 518 U.S. at 354; Strickler v. Waters, 989 F.2d 1375, 1383-84 (4th Cir. 1993) (in § 1983 claim, prisoner must allege actual injury or specific harm as a result of denial of access to law library to make a

---

[4] Ebersole also claims that the defendants retaliated against him for complaining about the seizure of his legal materials by sanctioning him with the loss of twelve days of good-time credit. Such an allegation, which attacks the fact or duration of confinement, is remediable first by a petition for writ of habeas corpus, rather than a claim under 42 U.S.C. § 1983. Preiser v. Rodriguez, 411 U.S. 475, 487(1973); see generally, Wilkinson v. Dotson, 544 U.S. 74, 78-82 (2005) (summarizing the distinctions between § 1983 and habeas actions). Accordingly, the undersigned recommends that his claim be dismissed.

Additionally, Ebersole argues in his reply to defendants' motion that the seizure of his legal materials also violated the Fourth, Sixth, and Fourteenth Amendments. To the extent Ebersole seeks to set out independent claims, his allegations are too conclusory. Twombly, 550 U.S. at 544. Accordingly, the undersigned recommends that they be dismissed because Ebersole has not set forth sufficient factual support for these claims.

claim); Hause v. Vaught, 993 F.2d 1079, 1084 (4th Cir. 1993) (injury due to alleged denial of access to law library must be shown, cannot be assumed). Moreover, "vague and conclusory" allegations are insufficient to meet the specific harm requirement. Strickler, 989 F.2d at 1383 (contention that access to a better law library would have led to an earlier habeas corpus petition and timely responses to other matters was speculative and failed to meet specific injury requirement).

The record reveals that the initial seizure of Ebersole's materials was reasonable and related to legitimate prison safety and security interests. The materials posed a safety risk because they were too voluminous to comply with NRADC's rules and were a fire hazard. Further, Ebersole's materials contained metal clips that could have been used as weapons. Further, the temporary seizure of his legal materials did not cause actual injuries. Specifically, the seizure did not cause Ebersole harm in the two legal actions he addresses with particularity, a suit pending in the Fourth Circuit Court of Appeals and a claim under the Federal Tort Claims Act.

As to the Fourth Circuit case, Ebersole could have had access to his files, but he refused the offered accommodations. Defendants have attached affidavits showing that NRADC personnel suggested alternatives that would have given Ebersole access to his files during the brief fourteen-day span that he was not permitted to keep them in his cell. The undisputed facts show that Ebersole refused these options. Ebersole claimed that he needed to work on all of his files every day, but this claim is belied by the fact that he alleges injuries only in two of his six alleged cases. Ebersole offers no explanation as to why he could not have taken the prison's offer to have the time sensitive files with him. To be sure, Ebersole did not have access to his Fourth Circuit file in early May, 2008. However, his lack of access to the file was of his own doing, as he refused the prison's offer to provide him with time sensitive legal files.

Beyond that, Ebersole was aware of the filing deficiencies in his case since at least February, nearly three months prior to his transfer to NRADC. Rather than file his brief and pay the required fees, Ebersole challenged the well-established provisions of the PLRA. Even after the court denied his challenge on March 11th, Ebersole waited until his transfer to NRADC on April 30th to prepare his filings. Moreover, when Ebersole did not have his filings to submit on or before their due date, Ebersole failed to take any remedial action. There is no indication on the record that Ebersole requested an extension of his filing deadline. Ebersole bore responsibility for keeping track of these details. Rather than cooperate with jail authorities, or seek additional time from the Fourth Circuit, Ebersole dragged his suit out to the last possible moment and refused NRADC's offers to make his time sensitive legal materials available to him. Ebersole's untimely filing of his Fourth Circuit brief is due to his own delay and intransigence, not any constitutional deprivation by NRADC. See Winslow v. Armentrout, No. 7:05cv727, 2006 WL 1171964, at *3 (W.D. Va. Apr. 28, 2006).

Ebersole also claims that he lost the opportunity to timely file a Federal Torts Claim Act case. However, Ebersole alleges that the deadline for this expired on June 10, 2008, a date long after his legal materials were returned to him. As such, he cannot demonstrate that the temporary fourteen-day seizure of his legal materials caused him to miss this deadline. Because the undisputed facts show that Ebersole was not denied access to the courts due to the temporary seizure of his legal materials, the undersigned recommends that this claim be denied.

Ebersole further claims that he was denied access to a law library and that once he did have access, it lacked sufficient federal resources and a functional typewriter. Ebersole notes that BOP regulations require that inmates have access to a law library. He also alleges that after he complained, prison officials found that his complaints were grounded and agreed to provide

14

more federal resources. In support of his claim, Ebersole generally alleges that he wished to do research on a Federal Tort Claims Act matter. However, this general allegation fails to demonstrate the required specific injury.

The Fourth Circuit has been clear that lack of access to the courts is a harm but that mere lack of access to a law library or to certain legal materials is not. Strickler, 989 F.2d at 1385-86. To that end, the denial of materials may constitute denial of a prisoner's rights if an inmate alleges that the inability to research a particular issue resulted in a specific injury. Id. at 1383.

Again, Ebersole's amended complaint fails because he has not set forth any showing that the lack of requested resources caused him a specific harm. Further, Ebersole has not made any showing that the lack of federal resources caused a specific deficiency in his legal research or that lack of research led to an inability to file his case. Indeed, had he needed a particular resource, he could have requested it and NRADC would have tried to locate it. Accordingly, the court finds Ebersole's claim fails.

Ebersole also claims that he was unable to type a form that was intended to be typed because the typewriter was broken. Ebersole's claim fails because he has not set forth any showing that the inability to type that form would have barred its filing or led to a claim's dismissal.

**C. Work Release**

Ebersole claims that his due process rights were violated because he was deprived of the transitional services provided by NRADC. The court finds that Ebersole has not protected right to those transitional services and, thus, his claim fails.

To prevail on a due process claim, Ebersole must show that was "deprived of life, liberty, or property by governmental action." Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997)

(internal citations omitted). In evaluating whether a prisoner's rights have been violated by a change in mode of incarceration, the courts, under both <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) and § 1983, have looked to whether the change creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 222-23 (2005) (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 483 (1995)).

Ebersole's removal from NRADC's work release program does not implicate a liberty interest. Placement in a prison, as opposed to a work release program, is not "atypical" or a "hardship" within the context of prisoner life. <u>Kitchen v. Upshaw</u>, 286 F.3d 179, 185-188 (4th Cir. 2002). <u>See also</u> <u>Tully v. Spicer</u>, No. 7:07cv00188, 2007 WL 1189607, at *1 (W.D. Va. Apr.19, 2007) (dismissing as frivolous § 1983 claim that plaintiff's removal from NRADC on trumped up infractions was a violation of plaintiff's rights); <u>Bevans v. Nw. Reg'l Adult Ctr.</u>, No. 7:06cv00098, 2006 WL 335610, at *1 (W.D. Va. Feb. 14, 2006) ("prisoners do not have any liberty interest in participating in a work-release program . . . [such] claims are not cognizable under § 1983").

In an attempt to counter this, Ebersole argues that he has a right to these transitional services under federal law 18 U.S.C. § 3624(c)(1), which states that:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.

However, the language cited by Ebersole clearly does not create a liberty interest. Rather, the statute is phrased as a directive to the BOP and is cabined by the language that an inmate should have transitional services "to the extent practicable." Ebersole's refusal to sign the necessary

16

forms renders impracticable his placement in the work release program. In short, the BOP has discretion as to placement of prisoners, and its placement decision in this case does not give rise to a Bivens or § 1983 claim. See Jackson v. LaManna, No. 6:06cv2812, 2007 WL 1862371, at *5 (D.S.C. Mar. 23, 2007) (inmate who was wrongfully removed from in-prison work because of a false accusation has no Bivens claim for return to that assignment). Accordingly, the court finds that Ebersole's claim fails because he not demonstrated that he has a right to transitional services.

### D. Subsistence and Medical Fees

Ebersole challenges the imposition of subsistence fees and medical care fees under 18 U.S.C. § 4042(a)(2) and the Takings Clause of the Fifth Amendment. The court finds that Ebersole's claims fails because he lacks standing to bring this claim.[5]

Ebersole lacks standing to challenge these fees because the undisputed record shows that he never paid either subsistence or medical fees. In order to bring a claim in federal court, a plaintiff must show that there is a case or controversy. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983). As such, a plaintiff must point to an actual injury, not merely an abstract difficulty. Id. In this case, Ebersole never took part in the work release program because he refused to consent to the program's terms and conditions. Thus, he was never charged subsistence or medical care fees. Accordingly, the undersigned recommends that this claim be dismissed.[6]

---

[5] Any claim under the Eighth Amendment's prohibition on excessive fines likewise fails, because Ebersole lacks standing.

[6] To the extent that Ebersole's claim is that he was burdened because he did not want to consent to a violation of 18 U.S.C. § 4042(a)(2) or the Takings Clause, his claim fails. Nothing in the text of 18 U.S.C. § 4042(a)(2) prohibits the BOP from charging fees for subsistence or medical care. Ebersole's claim is similarly misplaced under the Takings Clause of the Fifth Amendment, which states "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Indeed, the Takings Clause is frequently directed

17

### E. Retaliation

Ebersole asserts wide ranging retaliation based on his filing of grievances and complaints about his medical care, access to his legal files, and his non-participation in the work release program. The court finds that Ebersole has failed to demonstrate an actual impairment of a constitutional right and, thus, his claim fails.

It is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights, including his right to access the courts. See Am. Civil Liberties Union v. Wicomico Cnty, 999 F.2d 780, 785 (4th Cir. 1993). However, in order to sustain a cognizable retaliation claim under § 1983, an inmate must point to specific facts supporting his claim of retaliation. White v. White, 886 F.2d 271 (4th Cir. 1989). "[B]are assertions of retaliation do not establish a claim of constitutional dimension." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (federal courts should regard inmate claims of retaliation with "skepticism"). Further, in order to state a retaliation claim, the "plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75; Am. Civil Liberties Union, 999 F.2d at 785. "Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation." Am. Civil Liberties Union, 999 F.2d at 785. Thus, Ebersole must show "adverse impact" to his rights in order to make out a claim for retaliation. Id.

In this case, Ebersole does not point to any facts that suggest a retaliatory motive. Further, none of Ebersole's allegations show actual impairment of rights. Still further, he has not right to participate in the grievance process. Adams v. Rice, 40 F.2d 72, 75 (4th Cir. 1994). Because his conclusory allegations of retaliation fail to show impairment of a constitutional right

---

towards limits on the power of eminent domain. Ebersole has not made any showing that his private property was taken for public use.

and do not sufficiently allege facts showing retaliation, the undersigned recommends that Ebersole's retaliation claim be dismissed.

## IV.

In conclusion, the undersigned **RECOMMENDS** that this action be **DISMISSED** and that the defendants' motion to dismiss, or in the alternative for summary judgment be **GRANTED**. The Clerk is directed to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Plaintiff is reminded that pursuant to Rule 72(b), he is entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is directed to send copies of this Report and Recommendation to the parties.

Entered: August 27, 2010.

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States Magistrate Judge